**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

MARSHA MOORE,

        Plaintiff,

        v.                                                  CAUSE NO.: 2:18-CV-106-TLS

CALUMET TOWNSHIP OF LAKE
COUNTY and KIMBERLY K. ROBINSON,
individually and in her official capacity as
Calumet Township Trustee,

        Defendants.

**OPINION AND ORDER**

This matter is before the Court on the Defendant's Motion for Summary Judgment [ECF No. 44], which is fully briefed and ripe for ruling. For the reasons set forth below, the Court grants in part and denies in part the motion.

**PROCEDURAL BACKGROUND**

The Plaintiff Marsha Moore's Complaint [ECF No. 1] alleges violations of the United States Constitution arising out of the termination of her employment with the Calumet Township Trustee's Office on December 29, 2016. The Plaintiff contends that her employment was terminated because she supported Defendant Kimberly K. Robinson's opponent, incumbent Mary Elgin, in the 2014 Calumet Township Trustee election. Bringing her claims under 42 U.S.C. § 1983, the Plaintiff alleges a violation of her First Amendment right of political association (Count One), retaliation for exercise of her First Amendment right of free political speech (Count Two), and a violation of procedural due process under the Fourteenth Amendment with respect to a property right in her job (Count Three).

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant may discharge this burden by "either: (1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (citation omitted). In response, the non-movant "must make a sufficient showing on every element of [her] case on which [she] bears the burden of proof; if [she] fails to do so, there is no issue for trial." *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

In ruling on a motion for summary judgment, a court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citation omitted). A court's role "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted). Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## MATERIAL FACTS

### A.    Trustee Robinson and the Calumet Township Budget

Defendant Kimberly K. Robinson opposed the incumbent trustee Mary Elgin in the November 2014 Calumet Township Trustee Election, won, and took office in January 2015.

Compl. ¶ 7, ECF No. 1. Robinson campaigned, in part, on bringing Calumet Township back under budget. Def. Ex. A, 5:21–6:8, 6:19–22, ECF No. 45-1.

Upon taking office, Robinson retained a CPA from Cender & Company, LLC (Cender) to develop a four-year plan involving yearly budget cuts to bring the Township's budget in line with state guidelines. *Id.* at 6:25–7:4; *see also* Def. Ex. B (Feb. 20, 2017 Cender Mem.), ECF No. 45-2. Cender recommended an immediate reduction in personnel, and the number of Township employees was reduced from 74 to 60 within the first 90 days of Robinson's administration. Def. Ex. B, p. 2. Robinson received monthly reports from Cender in the first year, had monthly meetings with Cender and the Township finance department, and followed Cender's advice. *Id.* at 7:16–8:6. In the fall of 2015, Cender recommended eliminating five employees for the 2016 budget year and then recommended additional reorganization to further eliminate ten employees by early 2016. Def. Ex. B, p. 2. Eleven employees were terminated on December 31, 2015, seven of whom were not replaced. *See* Def. Ex. E (2014–2018 Termination/Separation List), ECF No. 45-5.

In a November 28, 2016 email to Chief Deputy Sherita Smith about employee assignments, Steve Dalton from Cender wrote that the number of employees paid from the Civil General Fund—thirteen employees—should be decreased. Pl. Ex. 4, ECF No. 49-4. Dalton recommended that the amount paid for salaries from the Civil General Fund be decreased from $600,000 to $480,000. *Id*. Dalton wrote, "If we consider an employee to be roughly $30,000 . . . I'd like to see this fund decreased by 4 employees . . . either layoffs or moving to Recreation Fund." *Id.* Dalton also expressed confusion about which employees were being paid from the Recreation and Community Service Funds. *Id*.

On December 8, 2016, one employee was terminated, and the position was not filled. Def. Ex. E. However, Robyn Johnson was hired on December 8, 2016, in a position that had been vacant since a resignation on July 17, 2015. *Id.* On December 29, 2016, four employees, including the Plaintiff, were terminated; none of the four positions were subsequently filled. *Id.* In February 2017, the Township had 41 employees, and Cender recommended reducing the number of employees to 37 by the end of 2017. Def. Ex. B, p. 2.

Cender's recommendations as to the number of positions that needed to be cut correlated with a specific reduction to the budget in dollars. Def. Ex. A, 50; *see also* Def. Ex. B. Robinson made the employment decisions and then informed Cender. Def. Ex. A, 50. The reduction in the number of employees occurred through the elimination of positions, reassignment, consolidation of positions, or not filling a position following a retirement or resignation. Def. Ex. A, 34:22–35:1, 37:6–13; Def. Ex. E. However, in some instances, new employees were hired to fill positions following a retirement or resignation. Def. Ex. A, 37:6–9.

Robinson hired seven individuals into the administration whom she considered to be her supporters. Pl. Ex. 1, 12:6–15, ECF No. 49-1.[1] Robinson considered Shareese Ward to be a key person in her administration. *Id.* at 16:3–8. Robinson hired Diane Kendrick, who had worked on Robinson's campaign, and Denise Kendrick, a Robinson supporter. *Id.* at 35:6–18. Robinson failed to include the Kendricks on a list of seventeen new employees. *Id.* at 35:20–25.

**B.     The Plaintiff's Employment**

The Plaintiff began working in the Calumet Township Trustee's Office in March 1990. Def. Ex. F, 11:7–11, ECF No. 45-6. She worked in different capacities before reaching the position of Assistant Deputy of the General Assistance Division during Elgin's administration

---

[1] The Plaintiff's brief identifies these seven individuals by name, but the evidence submitted lists only Dayna Bennett and David Bullock. *See* Pl. Br. 2 (citing Pl. Ex. 1, 12:7–10).

and held that position for seven or eight years. *Id.* at 17:1–19:5, 20:10–23. Cynthia Holman-Upshaw, the Deputy of the General Assistance Division, retired on December 31, 2015. *Id.* at 18:3–5, 19:15–21, 21:5–25; Def. Ex. E. The Deputy position was not filled. Def. Ex. E.

In July 2016, Robinson reorganized the General Assistance Division, replacing the Deputy and Assistant Deputy positions with three coequal Managers, each with a team. Def. Ex. A, 18:10–17. Robinson believed it would be beneficial to always have a manager on staff to cover vacations and time off. *Id.* at 18:12–17. The restructuring was not contemplated in the Cender reports "[b]ecause they weren't there to do day-to-day operations. We worked it out. As long as we did not change the bottom line of the budget that was submitted and passed by our board, that was how we decided to do it." *Id.* at 18:18–19:3.

Robinson filled the three new Managers positions with the Plaintiff, James Hudson, and Shareese Ward. *Id.* at 18:18–22. The Managers had no direct supervisor, answering to Chief Deputy Smith. *Id.* at 72:2–7; Def. Ex. F, 27:14–28:1. Hudson and Ward had previously worked under the Plaintiff as Supervisors, which led the Plaintiff to believe that she was demoted when they became coequals. Def. Ex. F, 26:4–22. As a Manager, the Plaintiff's responsibilities and pay remained the same as when she was Assistant Deputy. *Id.* at 26:23–27:3. However, Hudson and Ward no longer consulted with the Plaintiff on how to proceed with a problem. *Id.* at 27:3–9.

Hudson was hired on September 24, 2001. Pl. Ex. 5, ECF No. 49-5. Hudson supported Robinson. Pl. Ex. 1, 17:1–7.[2] Robinson hired Ward on January 20, 2015, as a Supervisor in the Assistance Division. Pl. Ex. 5. Robinson wanted to place Ward in a management position but was constrained by finances. Pl. Ex. 1, 27:1–5. When Robinson promoted Hudson and Ward

---

[2] Although the cited evidence is ambiguous, the Defendants do not dispute that Hudson was a Robinson supporter.

from Supervisor to Manager in July 2016, Hudson's salary increased from $34,500 to $36,000 and Ward's salary increased from $30,000 to $36,000. Pl. Ex. 5.

On December 29, 2016, the Plaintiff's employment was terminated, reducing the number of Managers from three to two; she was not replaced. Def. Ex. A, 39:2–8; Def. Ex. E. Robinson testified that the reduction in Managers from three to two was due to financial constraints. Pl. Ex. 1, 39:7–12. Chief Deputy Smith told the Plaintiff that five jobs had to be eliminated to reduce the budget and that she was one of them. Pl. Ex. 3, 33:7–10, ECF No. 49-3. The Plaintiff had more seniority than Hudson and Ward. Pl. Ex. 1, 40:2–4. The Plaintiff testified that Robinson did not speak with her in advance about terminating her employment. Def. Ex. F, 44:11–16. Robinson does not agree that people with less seniority should be laid off first. Def. Ex. A, 39:13–16.

The Plaintiff did not have an employment contract. Def. Ex. F, 92:14–19. The Plaintiff was not informed of her right to appeal her termination nor was she given any termination documentation other than COBRA and unemployment information. *Id*. at 115:3–11.

The Calumet Township Trustee Office Employee Handbook, revised March 23, 2015, provides, in relevant part, that employment can be terminated by "voluntary resignation, discharge, or retirement; the expiration of an employment contract; or a permanent reduction-in-force (RIF)." Def. Ex. G, p. 22, ECF No. 45-7. "[T]he Township reserves the right to terminate employment at any time and for any reason." *Id.* "Upon termination of employment, the employee shall receive a letter notifying him or her of the effective date and reasons for the termination." *Id*. at 24 ¶ (6). "A terminated employee may respond to the notice of termination in writing and have such response placed in his or her personnel file." *Id*. at 24 ¶ (7). The Handbook also provides: "Termination and discharge procedures are only guidelines and do not create a legal contract between the Township and its employees. . . . In addition, specified

grounds for termination are not all-inclusive since the Township reserves the right to terminate employment for any reason." *Id*. at 27 ¶ 23. Under the "Dispute Resolution (Grievance) Procedure," an "appropriate dispute" includes "[a] belief that Township policies, practices, rules, regulations, or procedures have been applied inconsistently to an employee." Pl. Ex. 2, p. 82 ¶ (1)(a), ECF No. 49-2.

**C.    The Plaintiff's Involvement in the 2014 Elgin Campaign**

During the 2014 Calumet Township Trustee race, the Plaintiff supported and campaigned for Mary Elgin because Elgin was her boss. Def. Ex. F, 37:15–38:17. The Plaintiff placed literature on cars, made phone calls, mailed literature, and participated in a rally on the corner of Grant Street and 25th Avenue where she and other participants wore t-shirts and held signs that read "Vote for Mary Elgin." *Id*. at 37:17–38:1, 39:12–14. The Plaintiff testified that, during the rally, Robinson was turning the corner in her car in front of St. Timothy Church onto 25th Avenue and saw the Plaintiff wearing the Elgin t-shirt and holding the Elgin sign. *Id*. at 39:12–17, 41:2–14. The Plaintiff testified that Robinson looked at her but did not speak to her or anyone in the Plaintiff's group. *Id*. at 41:13–16. The Plaintiff is certain that Robinson knew it was her at the rally. Pl. Ex. 3, 59:10–25.

The Plaintiff also testified that she crossed paths with Robinson several times coming and going from lunch at the Ponderosa restaurant, and, at that time, the Plaintiff had an Elgin bumper sticker on her car. Def. Ex. F, 39:7–12. Robinson knows what kind of car the Plaintiff drives. Def. Ex. A, 54:24–25; Pl. Ex. 3, 59:17–19. The Plaintiff testified that Robinson knew that the Plaintiff had the Elgin bumper sticker and that Robinson had seen her several times going to and from her car with the sticker on the car. Pl. Ex. 3, 59:14–16. At that time, the Plaintiff and

Robinson would have recognized each other and knew each other by name. Def. Ex. F, 40:4–15. At the Ponderosa, the Plaintiff was not wearing any items supporting Elgin. *Id.* at 40:16–24.

Robinson testified that she does not know whom the Plaintiff supported in the election. Def. Ex. A, 54:2–5. Robinson also testified that she does not recall seeing the Plaintiff at the Ponderosa restaurant. *Id.* at 55:1–2.

## ANALYSIS

### A.    First Amendment Political Discrimination and Political Retaliation Claims

The Plaintiff alleges that her First Amendment right to political association was violated when Robinson terminated her employment because the Plaintiff supported Robinson's opponent, Mary Elgin, in the 2014 election for Calumet Township Trustee. The First Amendment "protects political association as well as political expression." *Elrod v. Burns*, 427 U.S. 347, 357 (1976). Thus, it "generally prohibits government officials from dismissing or demoting an employee because of the employee's engagement in constitutionally protected political activity." *Heffernan v. City of Paterson*, 578 U.S. 266, 268 (2016) (citing *Elrod*, 427 U.S. 347; *Branti v. Finkel*, 445 U.S. 507 (1980)); *see Bless v. Cook Cnty. Sheriff's Off.*, 9 F.4th 565, 571 (7th Cir. 2021); *Yahnke v. Kane County*, 823 F.3d 1066, 1070 (7th Cir. 2016). There are "certain exceptions for policymaking positions and for employees having a confidential relationship with a superior." *Hall v. Babb*, 389 F.3d 758, 762 (7th Cir. 2004) (citing *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 65, 71 n.5 (1990); *Elrod*, 427 U.S. at 367, 375)).

"To establish a *prima facie* claim of First Amendment political *discrimination*, a plaintiff must show: (1) that the plaintiff's conduct is constitutionally protected; and (2) that the protected conduct was a motivating factor in the employer's actions." *Daza v. Indiana*, 941 F.3d 303, 308 (7th Cir. 2019) (citing *Bisluk v. Hamer*, 800 F.3d 928, 933 (7th Cir. 2015)). To establish a *prima*

8

*facie* claim of political *retaliation* under the First Amendment, a "plaintiff must additionally show a deprivation likely to deter free speech." *Id.* (citing *Yahnke*, 823 F.3d at 1070); *see also Bless*, 9 F.4th at 571. "To show that protected conduct was a motivating factor in the employer's action, a plaintiff must demonstrate a causal connection between the conduct and the employer's action." *Daza*, 941 F.3d at 309 (citing *Graber v. Clarke*, 763 F.3d 888, 899 (7th Cir. 2014)).

If a plaintiff establishes that her political conduct was a motivating factor in the defendant's action, the burden shifts to the defendant "to show that it would have taken the same action even in the absence of the protected conduct." *Yahnke*, 823 F.3d at 1070–71; *see also Bless*, 9 F.4th at 573. The burden then shifts back to the plaintiff to demonstrate that the defendant's proffered reason is pretextual. *See Yahnke*, 823 F.3d at 1071; *Bless*, 9 F.4th at 573. "On summary judgment, of course, the plaintiff's burden is simply to demonstrate that there is a genuine issue of material fact on the question of causation." *Yahnke*, 823 F.3d at 1071.

As to the prima facie case, the Defendants do not dispute that the Plaintiff engaged in constitutionally protected political conduct or that the Plaintiff suffered a deprivation when her employment was terminated. The Defendants also do not contend that the Plaintiff was in a policymaking position and, therefore, do not dispute that the First Amendment would protect her from being fired for political reasons. Thus, the only issue before the Court is causation. The Defendants argue that the Plaintiff has failed to demonstrate that her political conduct was at least a motivating factor in her termination.

The first question is whether the Plaintiff has offered sufficient evidence that Robinson was aware of the Plaintiff's political support for Robinson's opponent, Mary Elgin, in the 2014 election. *See Daza*, 941 F.3d at 309 ("As a threshold matter, the plaintiff must show that the defendant was aware of the protected conduct." (citing *Hall*, 389 F.3d at 762)). Robinson

testified that she did not know whom the Plaintiff supported in the 2014 election and that she did not recall seeing the Plaintiff at the Ponderosa restaurant. However, the Plaintiff testified that Robinson drove past her at the rally for Mary Elgin on Grant Street, that Robinson looked directly at the Plaintiff, and that the Plaintiff was wearing a Mary Elgin t-shirt and holding a Mary Elgin sign. The Plaintiff also testified that, during this time, she had a Mary Elgin bumper sticker on her car, that Robinson knew what kind of car the Plaintiff drives, and that Robinson and the Plaintiff saw each other coming and going from the Ponderosa restaurant. Based on this evidence, a reasonable jury could conclude that Robinson knew the Plaintiff supported Elgin. *See Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder."). Thus, whether Robinson knew that the Plaintiff supported Robinson's political opponent in the 2014 election is a disputed fact for trial.

Nevertheless, to survive summary judgment, the Plaintiff must also provide "evidence sufficient to create a genuine issue of material fact on the question of whether political motivation was a substantial factor in the decision to terminate her employment." *Zerante v. DeLuca*, 555 F.3d 582, 585–86 (7th Cir. 2009) (citing *Hall*, 389 F.3d at 762). The Plaintiff must offer evidence of a "causal connection . . . show[ing] 'that the protected activity and the adverse action are not wholly unrelated.'" *Bless*, 9 F.4th at 572 (quoting *Kidwell*, 679 F.3d at 966). "[I]t is not enough to show only that the plaintiff was of a different political persuasion than the decision makers or the successful applicant." *Hall*, 389 F.3d at 762 (citing *Nelms v. Modisett*, 153 F.3d 815, 818 (7th Cir. 1998)); *see Nekolny v. Painter*, 653 F.2d 1164, 1168 (7th Cir. 1981) (explaining that a plaintiff's burden is "not insignificant" and that "[a] disgruntled employee fired for legitimate reasons would not be able to satisfy his burden merely by showing that he

carried the political card of the opposition party or that he favored the defendant's opponents in

the election"). However, "[c]ircumstantial evidence, from which the trier of fact can infer

retaliation, can satisfy a plaintiff's burden." *Bless*, 9 F.4th at 572 (citation omitted). Here, the

circumstantial evidence offered by the Plaintiff meets her burden on summary judgment.

First, of the three coequal Managers, Robinson selected the Plaintiff, who supported

Robinson's opponent in the election, for termination during the RIF over Hudson and Ward, who

are Robinson supporters.

Second, the Plaintiff had the most seniority. She had worked for the Township since

1994. Hudson was hired in 2001, and Ward was hired in January 2015 soon after Robinson took

office. In addition, the Plaintiff had been the Assistant Deputy in the General Assistance Division

for seven to eight years at the time the Division was reorganized in July 2016, with both Hudson

and Ward reporting to her as Supervisors. Robinson was aware of the Plaintiff's seniority and

experience. Although evidence of superior qualifications of the terminated employee is not, by

itself, evidence of discriminatory motive, it can be a factor in a plaintiff's circumstantial case,

supporting "an inference that the defendants made their [employment] decision based on political

motivation rather than any other factor, permissible or forbidden." *See Hall*, 389 F.3d at 763–64

(citing *Nelms*, 153 F.3d at 818 n.4; *Garrett v. Barnes*, 961 F.2d 629, 633 (7th Cir. 1992));

*Schmoeller v. Village of Island Lake*, 324 F. Supp. 3d 983, 990–91 (N.D. Ill. 2018).

Absent from the Defendants' briefs is any explanation why the Plaintiff was chosen for

termination notwithstanding her seniority and experience managing the Assistance Division. *Cf.*

*Nelms*, 153 F.3d at 820 (finding that the plaintiff was chosen for termination because of

departmental reorganization and a reduction in the role of field investigators and that the

employee retained over the plaintiff had seniority and more exemplary work habits). The

Defendants do not identify any issues with the Plaintiff's performance. Rather, the Defendants assert that the Plaintiff was terminated as part of the RIF related to the Township's financial concerns, and Robinson testified that this resulted in the reduction of the number of Managers from three to two. While this financial reason explains the need to eliminate "an employee" or, perhaps, even one of the Managers, it does not explain why the Plaintiff was chosen from the three coequal Managers. Nor do the Defendants offer any specific financial basis for selecting the Plaintiff over Hudson or Ward, such as salary.

In addition, the timing of the Plaintiff's termination in relation to the restructuring of the General Assistance Division constitutes additional circumstantial evidence. *See Bless*, 9 F.4th at 572 (citing *Kidwell*, 679 F.3d at 966 ("Circumstantial evidence may include suspicious timing . . . .")). The Defendants are correct that the Plaintiff's protected political activity occurred in the fall of 2014 and that the Plaintiff worked for Robinson for approximately nineteen months as Assistant Deputy of the General Assistance Division until July 2016 and then for another five months as a Manager before her termination on December 29, 2016. However, whether the amount of time lapsed is suspicious "depends on context." *Loudermilk v. Best Pallet Co.*, 636 F.3d 312, 315 (7th Cir. 2011); *see Lalvani v. Cook County*, 269 F.3d 785, 791 (7th Cir. 2001) ("We acknowledge that temporal proximity is only evidence of causation, not a separate element of the *prima facie* case, and thus there will be cases in which a plaintiff can demonstrate causation despite a substantial time lag.").

When Robinson took office in January 2015, the management of the General Assistance Division consisted of a Deputy and an Assistant Deputy, with the Plaintiff having served as Assistant Deputy for several years. In January 2015, Robinson hired Ward, a supporter, as a Supervisor in the Division. Robinson testified that she wanted to place Ward in a management

position but was stymied by the budget concerns of the Trustee's Office. Those budget concerns were being addressed largely through a reduction in the number of employees. On December 29, 2015, the Deputy retired. In July 2016, Robinson restructured the General Assistance Division, replacing the Deputy and Assistant Deputy positions with three coequal Managers. This decision was made solely by Robinson and her advisors and was not directed by Cender. Robinson wanted multiple managers so that someone would always be available if others were out sick or on vacation. Robinson promoted Hudson and Ward, her supporters, to be Managers with the Plaintiff.

It was during the next round of terminations recommended by Cender on November 28, 2016, that the Plaintiff's employment was terminated on December 29, 2016, five months after the reorganization that promoted Ward and Hudson. The Defendants characterize this decision as eliminating the Plaintiff's job with no replacement, yet the Defendants do not acknowledge the recent creation of the two coequal Manager positions or Ward's promotion. Of the newly established three coequal Managers, the Plaintiff, who was the employee with the most seniority and the only non-Robinson supporter, was chosen for termination.

Although the Defendants are correct that the Plaintiff has not offered direct evidence of statements of political motivation, *see, e.g.*, *Yahnke*, 823 F.3d at 1069; *Nekolny*, 653 F.2d at 1168; *Allen v. Elgin*, No. 2:04-CV-1, 2006 WL 3314557, at *8–9 (N.D. Ind. Nov. 9, 2006), this circumstantial evidence taken together satisfies the Plaintiff's prima facie burden of showing that her political association is causally linked to Robinson's decision to terminate her employment.

The burden then shifts to the Defendants to show a non-political reason for the Plaintiff's termination. The Defendants cite generally the RIF throughout the Trustee's Office driven by the need to reduce expenditures on employee salaries to meet state mandated budget requirements.

13

*See Bellaver v. Quanex Corp.*, 200 F.3d 485, 494 (7th Cir. 2000) ("A RIF takes place when an employer decides to eliminate certain positions from its workforce."). In support, the Defendants offer evidence that the reduction in the number of employees to meet specific financial goals was set by Cender. However, the employment decisions themselves were left to Robinson. The Defendants have offered no explanation why a Manager of the General Assistance Division position was selected or why the Plaintiff, of the three Managers, was selected.

Considering the Defendants' RIF explanation, the burden shifts back to the Plaintiff "to present evidence 'demonstrate[ing] a material issue of fact as to pretext'" for this proffered rationale. *Bless*, 9 F.4th at 573 (quoting *Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004)). To meet her burden on pretext, the Plaintiff "must show that either (1) it is more likely that a discriminatory reason motivated the employer than the proffered non-discriminatory reason or (2) that an employer's explanation is not credible." *Id.* (same). That a defendant's proffered justification is unworthy of credence can be proven "by 'providing evidence tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate' the employment action." *Yahnke*, 823 F.3d at 1071 (quoting *Carter v. Chi. State Univ.*, 778 F.3d 651, 659 (7th Cir. 2015)). Here, the Plaintiff has met this burden.

The Plaintiff acknowledges that Calumet Township had financial difficulties, that Robinson campaigned on bringing the Township under budget, and that Robinson hired Cender to assist in this goal. However, while Cender set the budget reduction goals, Robinson made the specific personnel decisions. In this context, Robinson was trying to figure out how to move Ward, her supporter, into a management position, which she accomplished through the creation of the three Manager positions in the General Assistance Division in July 2016. Cender did not

instruct Robinson to hire or promote Ward and did not instruct Robinson to create the three

Manager positions in the General Assistance Division. Robinson testified that she created the

three Manager positions so that there would always be someone to cover vacations and sick

leave of the others; there is no testimony that this restructuring was for a financial reason as part

of the RIF. On November 28, 2016, Cender recommended that the salaries paid from the Civil

General Fund be reduced by $120,000, which could be accomplished by eliminating four salaries

at an average salary of $30,000. On December 29, 2016, four employees were terminated,

including the Plaintiff, none of whom were replaced. While Cender made the November 2016

recommendation, Robinson selected the employees for termination, and Robinson selected the

Plaintiff over Hudson and Ward. Again, the Plaintiff had the most seniority, had been the

Assistant Deputy in the General Assistance Division for approximately nine years, and had

previously supervised both Hudson and Ward.

The Plaintiff argues that Robinson's actions point to Robinson's desire to lay off the

Plaintiff in order to replace her with Ward, a supporter, which Robinson knew would have been

illegal. "An employer's reasons for firing an employee can be foolish or trivial or even baseless,

as long as they are honestly believed." *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 564

(7th Cir. 2016) (internal quotation marks omitted)). Indeed, "[a] city employee may be fired for a

good reason or for no reason at all, as long as she was not fired because of her constitutionally

protected activities." *Zerante*, 555 F.3d at 586 (citing *Garrett*, 961 F.2d at 633). Here, the

Defendants have offered no explanation for why Robinson chose the Plaintiff over Hudson and

Ward for the RIF. The Defendants do not address Robinson's selection of the Plaintiff over

Hudson and Ward, the Plaintiff's seniority, Robinson's desire to promote Ward, or that Robinson

hired other supporters, such as the Kendricks. Again, the Defendants do not identify any

performance issues with the Plaintiff's work or any financial reason for choosing the Plaintiff over Hudson and Ward. *Cf. id.* at 584 (finding no causation where the plaintiff was terminated by the new mayor because her department was underperforming, the new administration wanted to show the voters that they were serious about creating efficiency, and her replacement had private sector experience, even though the replacement had also been the new mayor's campaign treasurer).

Although the Defendants have shown that an employee would have been terminated as part of the reduction in force, the Defendants have not shown that the Plaintiff would have been selected if she had not supported Elgin in the 2014 election. *See Bisluk*, 800 F.3d at 934 ("Defendants may rebut that evidence by demonstrating that they would have taken the same action even if the protected conduct had not occurred." (citing *Peele v. Burch*, 722 F.3d 956, 960 (7th Cir. 2013))). On these facts, a reasonable trier of fact could find that the Plaintiff was chosen for inclusion in the RIF because of her political association. Accordingly, the Court denies the Defendants' motion for summary judgment on the Plaintiff's First Amendment claims in Counts One and Two of the Complaint.

**B.     Qualified Immunity**

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021) (quoting *White v. Pauly*, 580 U.S. —, —, 137 S. Ct. 548, 551 (2017)). Thus, the two questions are "whether the plaintiff has alleged a deprivation of a constitutional right at all, and whether the right at issue was clearly established at the time and under the circumstances presented." *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016) (citation omitted). "A right is clearly established when it is 'sufficiently clear that

16

every reasonable official would have understood that what he is doing violates that right.'"

*Rivas-Villegas*, 142 S. Ct. at 7 (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). Although the

Supreme Court's "case law does not require a case directly on point for a right to be clearly

established, existing precedent must have placed the statutory or constitutional question beyond

debate." *Id.* at 7–8 (quoting *White*, 580 U. S., at —, —, 137 S. Ct., at 551). The question of

whether a right is clearly established "must be undertaken in light of the specific context of the

case, not as a broad general proposition." *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198

(2004)). The plaintiff bears the burden of establishing both elements. *Leiser v. Kloth*, 933 F.3d

696, 701 (7th Cir. 2019) (citation omitted).

As set forth above, there is a genuine dispute of fact as to whether Robinson violated the

Plaintiff's First Amendment rights by terminating the Plaintiff's employment based on her

political support of Robinson's opponent. As to the second question, Robinson argues that she

was not on notice that her decision to terminate employees through an RIF violated any

established constitutional rights. This argument misstates the legal issue. The relevant question is

not the constitutionality of the termination pursuant to the RIF but the selection of the Plaintiff, a

non-policymaker, over Robinson's supporters for termination on the basis that the Plaintiff

supported Robinson's opponent. As argued by the Plaintiff, it was clearly established in 2016

that freedom from patronage firings is a First Amendment constitutional right. *See Heffernan*,

578 U.S. at 268 (citing *Elrod*, 427 U.S. 347; *Branti*, 445 U.S. 507); *Hall*, 389 F.3d at 762. The

"policymaking" exception was also clearly established. *See Branti*, 445 U.S. at 518. Here, it is

undisputed that the Plaintiff was not in a policymaking position. *Cf. Moss v. Martin*, 614 F.3d

707, 712 (7th Cir. 2010) (finding that the defendants were entitled to qualified immunity because

it was not clearly established that a government employee in the plaintiff's position could not be

fired for political reasons); *Felton v. Bd. of Comm'rs of Cnty. of Greene*, 5 F.3d 198, 200–01 (7th Cir. 1993) (same). Robinson is not entitled to qualified immunity, and the Court denies the motion for summary judgment on this basis.

**C.      *Monell* Liability**

For Calumet Township to be liable for damages under 42 U.S.C. § 1983, the Plaintiff must present evidence that her constitutional rights were violated pursuant to an official policy of the Township. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). The Plaintiff may prove the "official policy" requirement by showing an officially adopted policy, a governmental custom, or that "the deprivation was 'made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *Bradley v. Village of University Park*, 929 F.3d 875, 884 (7th Cir. 2019) (internal citations omitted). A single decision attributable to a municipal policymaker, even if the action is only taken once, can satisfy the *Monell* requirement. *Id.* (citations omitted). As Township Trustee, Robinson was the head of Calumet Township with final decisionmaking authority over the hiring and firing of employees. Robinson made the decision to terminate the Plaintiff's employment. By virtue of her authority as an official policymaker, her actions are considered the actions of the Township, forming the basis for the Township's liability under *Monell* if the Plaintiff establishes a constitutional violation at trial. The Court denies the Defendants' motion for summary judgment as to Defendant Calumet Township on this basis.

**D.      Fourteenth Amendment Property Right**

The Plaintiff alleges that she had a protected property interest in her employment with the Calumet Township Trustee's Office and that her due process rights were violated when her employment was terminated without an opportunity to grieve the decision. "The Due Process

Clause of the Fourteenth Amendment forbids a state to deprive any person of 'life, liberty, or property, without due process of law.'" *Dupuy v. Samuels*, 397 F.3d 493, 503 (7th Cir. 2005) (quoting U.S. Const. amend. XIV, § 1). A plaintiff bringing a procedural due process claim must establish: "(1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Forgue v. City of Chicago*, 873 F.3d 962, 969 (7th Cir. 2017) (citation omitted).

The Defendants argue that the Plaintiff, as an at-will employee, did not have a constitutionally protected property interest in her job. "For public employees, a 'protected property interest in employment can arise from a state statute, regulation, municipal ordinance, or an express or implied contract.'" *Bradley*, 929 F.3d at 882 (citations omitted). Indiana law recognizes two types of employment: "employment for a definite or ascertainable term and employment at will." *Moulton v. Vigo County*, 150 F.3d 801, 804 (7th Cir. 1998). "When no definite or ascertainable term of employment exists, an employee is considered an employee at will and may be terminated at any time, with or without cause." *Id.* at 804–05 (citing *Orr v. Westminster Vill. N., Inc.*, 689 N.E.2d 712, 717 (Ind. 1997)). "The presumption of at-will employment is strong, and [the Indiana Supreme Court is] disinclined to adopt broad and ill-defined exceptions to the employment at-will doctrine." *Perkins v. Mem'l Hosp. of South Bend*, 141 N.E.3d 1231, 1235 (Ind. 2020) (quoting *Baker v. Tremco Inc.*, 917 N.E.2d 650, 653 (Ind. 2009)).[3] "Under Indiana law, an employee at will has no property interest in further employment." *Moulton*, 150 F.3d at 804 (citing cases). As "officer" of the township, the Trustee

---

[3] The Indiana Supreme Court has recognized only three exceptions to the at-will employment doctrine: (1) if "'adequate independent consideration' supports the employment contract," (2) if an employee is "exercising a clear statutory right or obeying a legal duty" under the "public policy" exception, and (3) if promissory estoppel applies. *Perkins*, 141 N.E.3d at 1235 (quoting *Baker*, 917 N.E.2d at 653–54; *Orr*, 689 N.E.2d at 718). The Plaintiff has not argued or offered evidence of an exception.

19

"may appoint and remove all deputies and other employees in the officer's office." Ind. Code § 36-6-7-2.

The Plaintiff testified that she did not have an employment contract. Instead, she argues that she had a property interest in her employment based on the procedural safeguards contained in the employment handbook. Specifically, she cites the grievance provision, which provides that a matter of appropriate dispute includes "[a] belief that Township policies, practices, rules, regulations, or procedures have been applied inconsistently to an employee," and argues that she was not informed of her right to contest the termination of her employment.

However, the procedural protections by themselves do not create a property interest in the Plaintiff's continued employment because there was no substantive restriction in the handbook on the Defendant's decision to terminate her employment. *See Moulton*, 150 F.3d at 805 (recognizing that, although an employer's rules or regulations may create a property interest in a job, "[t]he mere fact that an employee is entitled to a hearing before [she] is terminated . . . does not establish that [she] has a property right in [her] job" (citing *Lyznicki v. Bd. of Ed., Sch. Dist. 167*, 707 F.2d 949, 952 (7th Cir. 1983))); *Montgomery v. Stefaniak*, 410 F.3d 933, 939 (7th Cir. 2005) (quoting *Moulton*, 150 F.3d at 805). To the contrary, the handbook provides that the "Township reserves the right to terminate employment at any time and for any reason" and can terminate employment by resignation, discharge, retirement, expiration of employment contract, or permanent RIF. The handbook also explains that "[t]ermination and discharge procedures are only guidelines and do not create a legal contract between the Township and its employees."

As an at-will employee, the Plaintiff did not have a constitutionally protected property interest in her continued employment with the Calumet Township Trustee's Office. Accordingly,

the Court grants summary judgment in favor of the Defendants on the Plaintiff's Fourteenth Amendment due process claim in Count Three.

## CONCLUSION

For the reasons set forth above, the Court hereby GRANTS in part and DENIES in part the Defendants' Motion for Summary Judgment [ECF No. 44], granting summary judgment in favor of the Defendants on the Plaintiff's Fourteenth Amendment claim in Count Three only. The Plaintiff's First Amendment claims in Counts One and Two remain pending against both Defendants.

SO ORDERED on January 21, 2022.

 s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT